No. 228.

CORNELIUS J. O'NEILL ET AL., PROSECUTORS, v. CITY OF BAYONNE, DEFENDANT.

No. 229.

WILLIAM E. CARROLL ET AL., PROSECUTORS, v. CITY OF BAYONNE, DEFENDANT.

No. 230.

JAMES QUINN ET AL., PROSECUTORS, v. CITY OF BAYONNE, DEFENDANT.

Argued June 7, 1923—Decided October 22, 1923.

Time—Standard Time Controls Organization of Municipal Commission—Ouster of Officers by New Commission—Rights of Police Under Act of 1917, &c.

On *certiorari*.

Before Justices TRENCHARD, PARKER and BERGEN.

For the prosecutors, *Fallon & Fallon*.

For the defendant, *Eugene T. Sharkey*.

PER CURIAM.

These are three writs of *certiorari* arising out of certain resolutions of the former board of commissioners of the city of Bayonne and other resolutions of the succeeding board at or about the time of a change of administration in that city. On May 15th, 1923, an old board of commissioners gave place to a new one at noon, according to the provision of the statute. Both boards seem to have assumed or acted on the assumption that the word "noon" meant noon of daylight saving time, whereas it is now contended for prosecutors, and we concur in that position, that noon was noon of standard time, as provided by another statute bearing on that subject. 4 *Comp. Stat.*, p. 4879.

Just before noon of daylight saving time the old board had a meeting and made a large number of appointments to the city departments, particularly the fire department and police force, and the new board, meeting immediately after the stroke of twelve, undertook to revoke all these appointments and to discharge, in particular, the prosecutor O'Neill from the office of chief of police, which he had held for two years previously.

The first case to be considered is that of prosecutor O'Neill himself. He had been apointed chief of police in 1921 and had held office without any dispute, so far as appears, until this action of the new board in 1923. He held under the act of 1917, and perhaps other legislation, by an indefinite tenure (*Pamph. L.* 1917, *ch.* 152), especially articles 16 and 17. The new board, after taking office, undertook to discharge him because a prior ordinance of 1907 required every appointee on the police force to be not less than twenty-four nor over thirty-five years old, and the prosecutor when appointed was over thirty-five years old, so they undertook to rescind the resolution of appointment passed in 1921. For the prosecutor the case of *Magner* v. *Yore*, 75 *N. J. L.*

198, is relied on, and it seems to be precisely in point, as it relates to the same city, same office, and a similar statute. That case was in *quo warranto,* and the removed officer, as relator, was successful, on the precise ground that though he, may have been ineligible at the time of appointment, he was protected by the Tenure of Office act. The case of Magner *v.* Yore was properly a *quo warranto* because the relator had been actually ousted. The present case is properly a *certiorari* because the prosecutor seems to be still holding his office and is attempting to remove and set aside certain municipal action tending to obstruct his performance of the duties of that office, and is thus brought within the line of decisions, of which the latest is *Murphy* v. *Freeholders of Hudson,* 92 *Id.* 244. The case of *Loper* v. *Millville,* 53 *Id.* 362, is relied on for defendants, but we think that case is not in point; and assuming, for present purposes, that it is, the later case of Magner *v.* Yore we deem to be controlling. The result is that the resolution affecting prosecutor O'Neill will be set aside, with costs.

Next as to the Carroll group. The facts seem to be that on April 11th the old board, having about four days of official life remaining, undertook to appoint some sixty-five persons as officers and patrolmen and firemen in the police and fire departments. The last meeting of the old board was on May 15th, at eleven thirty-five A. M., daylight saving time, as we understand it. The new board met on the same day, at twelve-three daylight saving time, and promptly resolved that whereas the finances do not warrant an increase in the police personnel, and so forth, that, for the reasons stated, the resolution just passed by the old board should be revoked and rescinded. That same evening, at an adjourned meeting, the new board amended the resolution by adding a statement that the patrolmen and others in question were unnecessary for the proper government of the city.

As to this group we reach the result that the resolution of rescission must be set aside for the reason that at the time it was passed the new board was not officially in existence, and that it was simply nugatory and void. It is argued that

although the minutes show the new board met at twelve-three daylight saving time, or eleven-three standard time, it does not appear that the resolution in question was passed before twelve o'clock, but this we think cannot help the defendants because it is manifest that the organization of the new board was a nullity; and where the statues fixes twelve o'clock noon as the precise moment when the official life of the new commissioners begins, and it appears that they undertook to perform official functions nearly an hour before that time, it will not only not be presumed that official action taken at a meeting so organized was taken after the clock had struck, but we think the presumption is to the contrary. To the suggestion that the new board was a *de facto* board, the answer is that the important elements of *de facto* officers, namely, official action and occupancy of the office by general consent, are totally lacking. Nor do we think that the resolution originally passed before noon could be vitalized by an amendment in the evening. It might have been vitalized by re-enactment, but no such course was taken. The result is to set aside the omnibus resolution relating to the Carroll group.

The third and last group may be called the Quinn group, and consists of a number of appointments made ostensibly or actually to fill vacancies by the old board. The new board at this same meeting, at twelve-three daylight saving time, undertook to rescind the appointments in the Quinn group, on the ground, among others, that there was no proof that the vacancies in question actually existed. But the actual existence or non-existence of a vacancy was not a matter to be decided by the board on any theory of "no proof." It was manifestly the duty of the board to ascertain in some way whether a vacancy existed or not and to base legitimate action on such ascertainment. So far as we can see, on the case before us, appointments in this group were presumably valid and were protected by the various tenure of office provisions of statute applicable thereto; and for these reasons, and because of the infirmity of the resolution, due to its premature passage before the new board came legally into existence,

the resolution vacating the appointments in this class must also be set aside.

Some of the prosecutors claim to be protected by provisions of the veteran acts, but the results above reached make it unnecessary to consider their special claims in that regard.

The prosecutors are entitled to costs in all three cases.